ORALANDA DAVIS, as Mother and Next Friend of Mitchell Thomas, Plaintiff-Appellee and Cross-Appellant, v. LAURA CASEY, as Special Adm'r of the Estate of Ramon Nightengale, Deceased, Defendant-Appellant and Cross-Appellee (Willie Taylor *et al.*, Defendants).

First District (6th Division)   No. 1—03—2194

Opinion filed October 21, 2005.

Michael Resis, of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, for appellant.

Marvin A. Brustin, Milo W. Lundblad, and Matthew S. Knorr, all of Law Offices of Marvin A. Brustin, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

The trial court entered judgment on a jury verdict in favor of Mitchell Thomas and against the estate of Ramon Nightengale, but the court limited Thomas's recovery to the policy limits of applicable insurance. Thomas cashed a check from the insurer for the amount the court permitted. The estate appealed, but made its appeal contingent: it would seek a new trial only if a court vacated the limitation on its liability or added in any other way to the recovery the trial court permitted. Thomas cross-appealed, arguing that the trial court should not have limited his recovery to the policy limits and the court allowed inadequate interest on the judgment.

The estate moved to dismiss Thomas's cross-appeal as moot because Thomas already accepted the benefits of the judgment he now attacks. We agree and therefore we dismiss the cross-appeal. We also dismiss the estate's contingent appeal because the contingency that would trigger the appeal has not occurred.

## BACKGROUND

Oralanda Davis gave birth to Thomas in January 1991. In 1992 she moved, with her children, into an apartment in a building Nightengale owned. A few months later, when a medical clinic found lead in

Thomas's blood, the City of Chicago sent a building inspector to determine whether the apartment had lead hazards. The inspector found cracked and peeling paint on the walls, and he measured dangerous levels of lead. Davis and her children promptly moved to a new apartment.

Thomas has a reading disability, an IQ around 70, and behavioral problems associated with his attention deficit hyperactivity disorder. In 1994 Thomas sued Nightengale for negligently maintaining the apartment with leaded paint peeling off the walls. He claimed the negligence caused his psychological problems.

Nightengale died in 1998. Thomas moved for appointment of a special administrator of the estate, pursuant to section 2—1008(b)(2) of the Code of Civil Procedure (735 ILCS 5/2—1008(b)(2) (West 1998)) to continue the defense of the estate. The court granted the motion.

Trial began in February 2002. On February 26, 2002, the jury found Nightengale's estate liable to Thomas, and it assessed damages totaling $1.6 million. The court entered judgment on the verdict.

On February 27, 2002, an attorney for the special administrator of Nightengale's estate offered Thomas's attorney a check for $100,394.52 and demanded a release of judgment. The administrator claimed that section 2—1008 limited the estate's exposure to the insurance policy limits of $100,000, plus interest from the date of judgment. Thomas offered to accept the check as partial payment of liability but refused to sign a release of judgment.

Thomas moved for assessment of costs on March 25, 2002. The court granted the motion in part on April 19, 2002. The estate filed a posttrial motion for a new trial or for a limitation on the amount of Thomas's recovery. By order dated June 27, 2003, the court denied the motion for new trial, but the court found that section 2—1008 limited Thomas's recovery to the available insurance coverage. The court ordered the parties to take the steps necessary for release of the judgment.

Thomas moved to compel the estate to assign to him the right to sue the insurer for its refusal to settle the case before trial for the policy limits. Thomas also sought a ruling that the estate's tender of the policy limits on February 27, 2002, did not stop interest from accruing on the judgment.

The court found that the estate made a valid tender of the proper amount on February 27, 2002, and therefore, on July 23, 2003, the court ordered a release of judgment *pro tanto* for the amount of the check. Thomas subsequently cashed the check for $100,394.52.

The estate filed a notice of appeal on July 28, 2003, but the notice made the appeal contingent with the following language:

"By this appeal, the defendant-appellant \*\*\* will ask the Appellate Court, in the event \*\*\* that the defendant-appellant's liability is not limited to the proceeds of the insurance policy protecting the estate and that the defendant's previous tender on February 27, 2002 was valid, and only in that event, to reverse that portion of the order of June 27, 2003 denying post-trial relief, and remand for a new trial."

Thomas filed a "NOTICE OF CROSS-APPEAL/APPEAL" on August 6, 2003. In the notice Thomas asked this court to reverse the ruling that limited his recovery from the estate to the amount of the check tendered on February 27, 2002, and to reverse the finding that the offer of that check constituted a valid tender that stopped interest from accruing further.

The estate moved to dismiss the cross-appeal as moot because Thomas had accepted the benefits of the trial court's judgment when he cashed the check. We took the motion with the case.

## ANALYSIS

■ Our supreme court has stated the applicable principles:

"[W]hen a judgment has been voluntarily paid or its benefits accepted the question becomes moot.
\*\*\*

We believe that it is a salutary rule that a party who either voluntarily satisfies a judgment under no legal compulsion or voluntarily accepts the fruits thereof has waived any error in the proceedings." *County of Cook v. Malysa*, 39 Ill. 2d 376, 379-81 (1968).

See also *Department of Public Works & Buildings v. Forbeck*, 118 Ill. App. 2d 231, 234-35 (1969).

Thomas argues that the stated principle does not apply here because his cross-appeal does not attack the underlying judgment and, unlike the appellant in *Forbeck*, he does not seek a new trial. The parties have cited no case with similar circumstances, and our research uncovered no such Illinois case.

However, many other states have adopted principles similar to those stated in *Malysa*, and some of them have addressed mootness issues in circumstances like those of this case. In *Wilson v. Fullerton*, 332 Ark. 111, 964 S.W.2d 208 (1998), the jury awarded the plaintiff a verdict for damages totaling $150,000. The trial court ordered a remittitur reducing the plaintiff's recovery to less than $31,000. The plaintiff appealed from the remittitur and two of the defendants cross-appealed, seeking a new trial. A third defendant paid the plaintiff its part of the damages the court awarded. The plaintiff sought execution of the remainder of the $31,000 judgment against the other defendants.

The defendants moved to dismiss the plaintiff's appeal. The court said:

> "[A]cceptance of an amount less than appellant contends is due him is an estoppel against his appeal only when, by seeking to gain more by the appeal, he risks a smaller recovery on reversal. [Citations.]
>
> [The plaintiff] argues that, if we affirm the trial court's remittiturs, he will be entitled to no less than the reduced judgment. He is in error. In the present case, [the plaintiff], by prosecuting his appeal, incurs the hazard of recovering less than was awarded him by the judgment appealed from. From the outset of this litigation, [the defendants] have denied they owed [the plaintiff] any damages ***. ***
>
> *** [If the defendants] prevail in their appeal and obtain a new trial on the reversal and remand of this case, a jury on retrial could well determine no compensatory damages should be awarded. *** ***
>
> *** [W]hen [the plaintiff] voluntarily accepted partial satisfaction of the judgment, and later issued a writ of execution in an effort to satisfy the entire judgment against [the defendants], he knew there was a dispute as to whether he would be entitled to the remitted judgments he had obtained. He knew [two defendants] had challenged all amounts of damages owed, and was well aware that they intended to continue that challenge, since they had filed a cross-appeal. [The plaintiff] has, therefore, waived his right of appeal by virtue of his execution efforts and the satisfaction of judgment against [the third defendant]. Consequently, his appeal must be dismissed." *Wilson*, 332 Ark. at 115-17, 964 S.W.2d at 210-11.

Similarly, in *White Construction Co. v. DuPont*, 423 So. 2d 549 (Fla. App. 1982), the court held that the plaintiff's acceptance of a payment of the judgment against the defendant following a remittitur foreclosed the plaintiff's appeal from the remittitur, even though the plaintiff did not seek a new trial and expressly credited the payment *pro tanto*.

The court in *Basic American, Inc. v. Shatila*, 133 Idaho 726, 745, 992 P.2d 175, 194 (1999), aptly stated the general rule:

> "If the party has collected his judgment, and in seeking to gain more by the prosecution of an appeal *thereby incurs the hazard of eventually recovering less*, then his appeal should be dismissed. If, on the other hand, the appeal is from such an order or judgment as that he *could in no event recover a less favorable judgment* and that he incurs no hazard of ever receiving less than the judgment already collected by him, we see no objection to the prosecution of his appeal." (Emphasis in original.)

Also, in *Schubert v. Reich*, 36 Cal. 2d 298, 223 P.2d 242 (1950), the trial court granted the plaintiff a new trial on condition of payment to the defendant of attorney fees. The court held that the defendant, by accepting the payment of the fees, waived appeal from the order granting a new trial.

▇ Here the relief Thomas seeks on appeal would trigger the contingency in the estate's notice of appeal, opening the entire judgment, including the amount Thomas has already accepted, to reconsideration. The estate has always disputed Thomas's right to any recovery. With the limited notice of appeal the estate accepts liability on the trial court's judgment, but only if the amount of the estate's liability as established in the final judgment remains undisturbed. Thus, by seeking to gain from the cross-appeal a recovery greater than the trial court awarded, Thomas incurs the hazard of recovering less, should we grant the estate a new trial on all issues. Under the principle stated in *Basic American,* as reflected in *Wilson, Schubert,* and *White Construction,* we dismiss Thomas's cross-appeal as moot because he has accepted the benefits of the trial court's judgment.

As we have dismissed Thomas's cross-appeal, we have no grounds to address the issue of whether the estate's "liability is not limited to the proceeds of the insurance policy," and we will not review the trial court's finding "that the defendant's previous tender on February 27, 2002 was valid." The conditions specified in the estate's contingent notice of appeal have not occurred. Accordingly, we dismiss the estate's appeal as well.

Appeal dismissed.

TULLY and FITZGERALD SMITH, JJ., concur.